# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

THOMAS EDWARD WHITED,

              Plaintiff,

vs.

CAROLYN W. COLVIN, Commissioner
of Social Security,

              Defendant.

No. C13-4039-MWB

**REPORT AND
RECOMMENDATION**

---

Plaintiff Thomas Edward Whited seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his applications for Social Security Disability benefits (DIB) and Supplemental Security Income benefits (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Whited contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that he was not disabled during the relevant period of time. For the reasons that follow, I recommend that the Commissioner's decision be affirmed.

### *Background*

Whited was born in 1957 and completed the 10th grade. AR 32, 34. He previously worked as a truck detailer, cab dispatcher, lubrication technician, bakery sanitation supervisor and housekeeping cleaner. AR 64, 268-69. Whited protectively filed for SSI and DIB on February 8, 2010, alleging disability beginning on October 1,

2009,[1] due to post prostate cancer, urinary incontinence, depression and chronic obstructive pulmonary disease. AR 12, 210, 242, 262. His claims were denied initially and on reconsideration. AR 76-79. Whited requested a hearing before an Administrative Law Judge (ALJ). AR 95. On February 23, 2012, ALJ Diane R. Flebbe held a hearing via video conference during which Whited and a vocational expert (VE) testified. AR 29-75.

On March 7, 2012, the ALJ issued a decision finding Whited not disabled since October 9, 2009. AR 10-23. Whited sought review of this decision by the Appeals Council, which denied review on April 8, 2013. AR 2-4. The ALJ's decision thus became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

On May 2, 2013, Whited filed a complaint in this court seeking review of the ALJ's decision. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition of the case. The parties have briefed the issues and the matter is now fully submitted.

### Disability Determinations and the Burden of Proof

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

---

[1] The alleged onset date was amended to October 9, 2009, at the administrative hearing. AR 10, 32.

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is

considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national

economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### *Summary of ALJ's Decision*

The ALJ made the following findings:

(1)     The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

(2)     The claimant has not engaged in substantial gainful activity since October 9, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

(3)     The claimant has the following severe impairments: post prostate cancer with residuals, depression, and chronic obstructive pulmonary disease ("COPD") (20 CFR 404.1520(c) and 416.920(c)).

(4)     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5)     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: the claimant must avoid concentrated exposure to fumes, odors, dust, gases, and other

environmental irritants; secondary to lapses in focus and concentration that would preclude the ability to sustain the type of complex tasks involved in skilled work, he is limited to semiskilled work; the claimant is limited to occasional work interaction with the general public; and the claimant must have two additional two to three minute breaks in the morning and two additional two to three minute breaks in the afternoon for the use of the bathroom (total of extra 8-12 minutes per day).

(6)     The claimant is capable of performing past relevant work as a truck detailer, lube technician, and housekeeping cleaner. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

(7)     The claimant has not been under a disability, as defined in the Social Security Act, from October 9, 2009, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

AR 12-23. At Step Two, the ALJ found Whited's other alleged impairments of a head injury, rash, hypertension and hyperlipidemia were not severe. AR 13. The ALJ noted that Whited has a history of alcohol abuse, but found this was also not a severe impairment due to the lack of evidence demonstrating it affected his functioning more than minimally. The ALJ also acknowledged Whited's complaints of tremors and limitations with his upper extremities but concluded that this was not a medically determinable impairment because there was no corresponding diagnosis. *Id.*

At Step Three, the ALJ found that Whited's COPD did not meet or equal Listing 3.02(A) and his prostate cancer did not meet or equal Listing 13.24. AR 13-14. As for his mental impairment, she found that it did not meet or equal Listing 12.04. She first analyzed the "paragraph B" criteria, which require two "marked" limitations or one

"marked" limitation and "repeated" episodes of decompensation.[2]  *Id.*  A "marked" limitation is one that is more than moderate but less than extreme.  The ALJ found that Whited had mild restriction in activities of daily living, and moderate difficulties in social functioning and concentration, persistence or pace.  AR 14-15.  She noted that although he had one psychiatric hospitalization in June 2010, it did not last 14 days, and therefore Whited had no episodes of decompensation of extended duration and the "paragraph B" criteria were not satisfied.  She also considered the "paragraph C" criteria, but the evidence failed to establish those criteria, as well.  *Id.*  Whited does not challenge the ALJ's findings at Step Three.

At Step Four, the ALJ found that Whited had the RFC to perform medium work except that he must avoid concentrated exposure to fumes, odors, dust, gases and other environmental irritants, he is limited to semiskilled work due to lapses in focus and concentration that preclude the ability to sustain the type of complex tasks involved in skilled work, he can only occasionally interact with the general public and he must have two additional two to three minute breaks in the morning and two additional two to three minute breaks in the afternoon for use of the bathroom (total of extra 8-12 minutes per day).  AR 15-16.  In explaining her assessment, the ALJ first summarized Whited's testimony and the medical evidence.  AR 16-19.  She noted that Whited alleged disability when his cancer was removed and his catheter was taken out.  AR 16.  He became incontinent when he moved and the problem had become increasingly worse.  He described being depressed, isolative, angry and confrontational.  *Id.*  He has difficulty with concentration and is easily distracted.  As for his physical limitations, bending and lifting caused problems with incontinence.  He said he could not stand due

---

[2] Episodes of decompensation are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace."  20 CFR Part 404, Subpart P, Appendix 1.  Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

to his prescriptions, but thought he could stand for up to five hours as long as it was not all at once. He has shortness of breath and uses inhalers. His daily activities include cleaning countertops and going to the store three times a week. He does not cook, vacuum, sweep or do dishes. He visits with his son and grandchildren five to six days a week. He has trouble dressing himself, does not shower every day and his wife helps him put on clothing. *Id.*

The medical evidence establishes that Whited underwent a prostatectomy in October 2009. AR 17. In February 2010 he had a follow-up appointment with Dr. McKay. He described his difficulties with incontinence stating that he had to wear two pads per day instead of one. Dr. McKay told Whited that the heavier activities he was engaging in at work made the problem worse. AR 17. He did not believe Whited was medically at risk to go back to full activities, but recommended Whited use the bathroom once an hour. *Id.* In May 2010, Whited reported continued difficulties with incontinence. Dr. McKay told him there was no limit on his activities that could lead to injury from working. However, he noted that heavier activities would lead to leakage. *Id.* The ALJ gave Dr. McKay's opinion significant weight and adopted limitations of two additional bathroom breaks in the morning and afternoon and medium work.

In February 2010, Whited also saw Bruce Jones, M.D., for concerns relating to his depression and anger. AR 17, 513. Whited explained that he had a confrontation with his boss and was demoted to a job he was not trained for. He was later discharged for poor attendance. *Id.* Whited said he had always had problems with anger, but was better able to control his physical actions now. He did not like to be around people and did not socialize. *Id.* Dr. Jones noted that he was well groomed and cooperative at this appointment and assigned a global assessment of functioning (GAF) score of 45.[3]

---

[3] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual*

Whited was involuntarily admitted to the hospital in June 2010 after he took numerous pills, drank heavily and made statements about hanging himself. AR 18. He had been in the emergency room the night before for alcohol intoxication and a head injury. He reported increased drinking since his mother died in March. He denied illicit drug use but tested positive for cannabis upon admission. He described being depressed about his mother's death and blamed alcohol consumption for his mood. His GAF score was 46. He was cooperative and polite during his hospitalization and socialized with select peers. He denied shortness of breath with activities and stated he was active at his job. He was discharged with a GAF score of 50 and advised to follow up with alcohol treatment. *Id.*

In June 2010, Whited had an x-ray of his chest, which was unremarkable with no abnormalities. At a follow-up in July, Whited reported he had been stable since his release and felt his medication was effective. *Id.* In October, Whited went to the emergency room after taking too many Valium to help him sleep. *Id.* He admitted drinking beer daily. He reported to the emergency room again that month complaining of shortness of breath among other things. *Id.* He underwent testing in December which showed signs of mild air trapping. He was advised to stop smoking and was prescribed Spiriva. *Id.*

Whited began seeing Anupama Upadhyay, M.D., in April 2011. AR 19. He stated he had not attended an anger management group as recommended and he continued to smoke. *Id.* In June, he reported that he sometimes forgot to take his medication and had stopped taking Advair and Spiriva because they left a strange taste in his mouth. *Id.* His breathing was stable with occasional wheezing. Later that month he saw Dr. Upadhyay for a medication evaluation and stated he was having hallucinations and was distracted. Dr. Upadhyay increased his lithium. *Id.* Whited

---

*of Mental Disorders* 34 (4th ed.) (DSM-IV). A GAF score of 41 to 50 indicates serious symptoms or serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). DSM-IV at 34.

reported continued visual and auditory hallucinations in August 2011 and irritability. Dr. Upadhyay increased his medication. Whited's hallucinations continued into October 2011, but he did not want to increase his medications. He reported tremors and shakes, which the doctor thought were caused by the lithium medication. He was described as cooperative and pleasant at this appointment, but not interactive. *Id.*

Dr. Upadhyay completed a psychiatric questionnaire at the request of Whited's attorney in which she gave Whited a GAF score of 55 and noted he was doing fair on his medication. AR 22. She found he had mild to moderate limitations in understanding, memory, sustained concentration and persistence, mild to moderate limitations in social interactions, and moderate limitations in adaptation. *Id.* She thought Whited was incapable of even low stress jobs and would miss work more than three days per month. *Id.* The ALJ found Dr. Upadhyay's opinions were not entitled to controlling weight because: (a) opinions that a claimant is incapable of working are reserved for the Commissioner, (b) her course of treatment was not consistent with what one would expect for someone who was truly incapable of working, (c) her opinion was inconsistent with her own treatment notes and (d) she was asked to provide her opinion at the request of Whited's attorney. *Id.* The ALJ did find that Dr. Upadhyay's opinion of mild to moderate limitations in concentration, persistence or pace and social functioning was consistent with other evidence in the record and she accounted for these limitations in the RFC.

The ALJ also discussed Whited's credibility and found his allegations of complete disability were not fully credible. She explained that the medical record did not support a finding of total disability. AR 19-21. With regard to his COPD, Whited continued to smoke despite recommendations to quit, only described his symptoms as "a little shortness of breath," and the objective medical evidence only revealed mild air trapping. The ALJ found that a limitation to avoid exposure to environmental irritants was sufficient to account for his COPD diagnosis. AR 19-20.

The ALJ also found that the residuals from Whited's prostate cancer were not serious enough to preclude all work activity. She specifically noted that he had been advised to do Kegel exercises and attend physical therapy to improve his incontinence issues, but the record did not indicate that he complied with these recommendations. Whited also failed to mention his incontinence issues during numerous appointments. Nonetheless, the ALJ included a limitation of two additional bathroom breaks in the morning and afternoon and limited Whited to medium work. AR 20.

In addressing Whited's mental impairment, the ALJ first noted that his symptoms were not serious enough to require hospitalization. His hospitalization in June 2010 was caused by excessive drinking and there had been no hospitalizations for mental issues since he stopped drinking in November 2010. She also noted the record reflected significant gaps in treatment and Whited had not attended anger management class as recommended. Finally, she noted that the doctor found he was tolerating his medications well and was consistently pleasant and cooperative. The ALJ stated that Whited's symptoms seemed to be transient and were expectable reactions to psychosocial stressors.

The ALJ also discredited Whited based on his daily activities and work history. She found that his activities of going to the store three to four times a week and seeing his son and grandson five to six times a week indicated that his mental impairments did not cause more serious limitations than those provided in the RFC. As for his work history, she noted that his most recent job ended due to difficulty with a supervisor and improper training for a new position rather than a physical or mental impairment. Whited had also been collecting unemployment benefits, which required him to represent that he was ready, willing and able to work. AR 21. Finally, she noted that the record showed Whited had suffered from depression for the past 10 to 15 years, during which time he engaged in substantial gainful activity. The ALJ found this significant because there was no evidence his depression had worsened after the alleged onset date.

The ALJ acknowledged that Whited had been assigned several GAF scores below 50, which indicates severe symptoms. However, she noted these low scores were all assigned at times when Whited had regularly been abusing alcohol. *Id.* He has been sober since November 2010 and has received higher scores of 55 since then from his treating provider, which indicates only moderate symptoms. For these reasons, the ALJ gave little weight to the GAF scores in the record. *Id.*

The ALJ concluded that Whited was capable of performing his past relevant work as a truck detailer, lube technician and housekeeping cleaner. *Id.* This work did not require the performance of work-related activities that would be precluded by the RFC provided. Therefore, the ALJ found that Whited had not been under a disability since October 9, 2009, through the date of the decision. AR 23.

### *The Substantial Evidence Standard*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that

detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

*Discussion*

Whited makes five arguments in contending the ALJ's decision is not supported by substantial evidence:

I.     Although the ALJ stated she gave the claimant the benefit of the doubt with respect to his urinary issues and allowed two additional bathroom breaks, both in the morning and afternoon, as well as limiting the claimant to medium work, the ALJ failed to include all his urinary problems

II.    The ALJ erred in not treating claimant's limitations in combination, but instead analyzes them each individually

III.   The ALJ did not give correct weight to Dr. McKay, plaintiff's treating physician

IV.    The ALJ further ignored the opinion of the treating psychologist, Dr. Upadhyay who completed a psychiatric questionnaire

V.     The ALJ failed to make specific credibility findings and what vague findings were made were incorrect

Because these arguments contain overlapping issues, I will address Points I and III together (regarding Dr. McKay's opinion and Whited's urinary incontinence) and Points II and IV together (regarding Dr. Upadhyay's opinion and whether the ALJ considered Whited's impairments in combination). I will then address Point V separately.

**A.     *Did the ALJ Give Dr. McKay's Opinion Appropriate Weight and Does the RFC Adequately Address Whited's Urinary Incontinence?***

Whited argues the ALJ's RFC does not adequately address his urinary incontinence, because Whited will likely experience leakage with the lifting limitations

in the medium work category.[4]  He argues that Dr. McKay's warning against "heavier" activities" was not fully accounted for in the RFC because it does not necessarily correspond with the Social Security standard of "heavy" work.[5]  He contends the ALJ should have presented the problem of leakage when lifting (even at the medium work level) to the VE.

The Commissioner argues that Whited misconstrues Dr. McKay's opinion concerning lifting limitations.  Dr. McKay stated "there is not a specific limit on his activities such that he could damage or hurt himself by continuing to work."  AR 326. As such, the Commissioner contends that the ALJ's RFC is consistent with Dr. McKay's opinion.  The Commissioner also points out that the ALJ fully considered the extent of "heavier" activities leading to leakage because the VE found Whited had been performing "heavy work" (as defined in the Social Security regulations) at the time Whited made these complaints to Dr. McKay.  AR 66.

A claimant's RFC is defined as the most a person can still do despite his or her limitations.   20 C.F.R. §§ 404.1545(a), 416.945(a).   "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'"  *Goff*, 421 F.3d at 793.  "Some medical evidence must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace." *Baldwin*, 349 F.3d at 556 (internal citation and quotations omitted).

A treating physician's opinion is given "controlling weight" as long as it is "well–supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."

---

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c).

[5] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds."  20 CFR §§ 404.1567(c), 416.967(c).

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). A treating physician's opinion is generally entitled to "substantial weight," but such an opinion does not "automatically control" because the ALJ must evaluate the record as a whole. *Wilson v. Apfel*, 172 F.3d 539, 542 (8th Cir. 1999). "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Id.* at 1013 (quoting 20 C.F.R. § 404.1527(c)(2)).

The ALJ adequately accounted for Whited's urinary incontinence in the RFC by relying on the opinion of Dr. McKay. She assigned Dr. McKay's opinion "significant weight" because it was "not contradicted by any other medical opinion and [was] consistent with the evidence of record." AR 21. Dr. McKay stated that heavier activities would lead to leakage and Whited could also modify his work by using the restroom every hour. Otherwise, there were no specific limits on his activities. AR 324-25. Whited complained about incontinence to Dr. McKay in February 2010, while working as a bakery sanitation supervisor, and admitted he had been doing increasingly heavier activities at this job. AR 61-68, 195, 200, 324-25. At the hearing, the VE asked several questions about Whited's activities in this position and determined that it fell into the heavy category as Whited performed it. AR 65-66. The ALJ adopted Dr. McKay's recommendations and provided for medium work and two additional restroom breaks in the morning and afternoon in the hypothetical question and RFC. The VE testified that Whited would be able to perform past relevant work as a truck detailer, lube technician and housekeeping cleaner with these limitations. AR 69-71.

The ALJ's evaluation of Dr. McKay's opinion and Whited's urinary incontinence is supported by substantial evidence in the record as a whole. All limitations identified by Dr. McKay were included in the ALJ's hypothetical question and RFC. There is no evidence that Whited's limitations concerning his urinary incontinence are greater than those provided in the RFC. For these reasons, the ALJ

did not err in assigning Dr. McKay's opinion significant weight and adopting his recommended limitations into the RFC.

## B. Did the ALJ Give Dr. Upadhyay's Opinion Appropriate Weight and Consider Whited's Impairments in Combination?

Whited argues the ALJ did not combine all of the limitations from each of his impairments into a single hypothetical question for the VE to consider. He specifically contends that the ALJ should have given Dr. Upadhyay's opinion greater weight and included all of the limitations she identified in the hypothetical question.

The Commissioner argues that because the ALJ properly discounted Dr. Upadhyay's opinion, the ALJ was not required to include all of her limitations in the hypothetical or rely on the VE's testimony concerning limitations that were ultimately discredited. The Commissioner contends that the hypothetical question the ALJ relied on in determining that Whited could perform past relevant work adequately captured the credible, concrete consequences of Whited's impairments in combination.

As noted above, a treating physician's opinion is given "controlling weight" as long as it is "well–supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "It is well established that an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record." *Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir. 2000). "An ALJ must not substitute his opinions for those of the physician." *Finch*, 547 F.3d at 938 (internal quotations omitted).

When a claimant has multiple impairments, "the Social Security Act requires the Commissioner to consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient medical severity to be disabling." *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000). A hypothetical question to the VE need only include those impairments and limitations

found credible by the ALJ. *Heino v. Astrue*, 578 F.3d 873, 882 (8th Cir. 2009). "[A]n ALJ may omit alleged impairments from a hypothetical question posed to a vocational expert when '[t]here is no medical evidence that these conditions impose any restrictions on [the claimant's] functional capabilities'" or "when the record does not support the claimant's contention that his impairments 'significantly restricted his ability to perform gainful employment.'" *Buckner v. Astrue*, 646 F.3d 549, 561 (8th Cir. 2011) (quoting *Owen v. Astrue*, 551 F.3d 792, 801-02 (8th Cir. 2008)).

Dr. Upadhyay completed a psychiatric questionnaire at the request of Whited's attorney. AR 1223-31. She primarily identified mild to moderate limitations and thought Whited was incapable of low stress jobs and would miss more than three days of work per month. AR 22. The ALJ did not give Dr. Upadhyay's opinion controlling weight because: (a) opinions that a claimant is incapable of working are reserved for the Commissioner, (b) her course of treatment was not consistent with what one would expect for someone who was truly incapable of working, (c) her opinions were inconsistent with her own treatment notes and (d) she was asked to provide her opinion at the request of Whited's attorney. *Id.* However, the ALJ did account for the mild to moderate limitations Dr. Upadhyay identified in the areas of social functioning and maintaining concentration, persistence or pace. She included these in the RFC and hypothetical question to the VE.

The first hypothetical question to the VE included the following limitations:

> I would like you to please assume the ability to perform medium exertion work. I would like you to assume that there is a need to avoid concentrated exposure to fumes, odors, dusts, gases and other environmental irritants . . . . I'd also like you to assume occasional work interaction with the general public. With these limitations, would Mr. Whited be able to perform any past work?

AR 66.  The VE testified that Whited would be able to perform all of his past relevant work under this hypothetical.[6]  AR 67.  If medium work was changed to light work, the VE testified that Whited could still perform his past relevant work as a truck detailer and housekeeping cleaner.  AR 68.  The ALJ then added a limitation of semiskilled work, secondary to lapses in focus and concentration that would preclude the ability to sustain the type of complex tasks involved in skilled work.  The VE testified that the addition of this limitation would only preclude past relevant work as a bakery sanitation supervisor.  *Id.*  The ALJ then added the limitation of two additional breaks in the morning and two additional breaks in the afternoon taking no longer than a total of 8 to 12 minutes in a day.  AR 70.  The VE testified that none of the jobs he identified would be precluded with this additional limitation.  AR 71.

I find that the ALJ's evaluation of Dr. Upadhyay's opinion is supported by substantial evidence in the record as a whole and the ALJ did not need to include all of the limitations Dr. Upadhyay identified in the hypothetical to the VE.  The ALJ discredited the parts of Dr. Upadhyay's opinion that stated Whited was incapable of performing low stress work and would miss more than three days of work per month.  The ALJ found these statements were not supported by her treatment records or other substantial evidence in the record.  This is a good reason for discrediting her opinion.  *See Prosch*, 201 F.3d at 1013-14 ("It is well established that an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record.").  However, the ALJ did account for the mild to moderate limitations Dr. Upadhyay identified in the areas of concentration, persistence or pace and social functioning by including limitations of semiskilled work secondary to lapses in focus and concentration and occasional interaction with the public. All other limitations identified by Dr. Upadhyay were properly discredited by the ALJ.

---

[6] The VE later clarified the bakery sanitation supervisor position could only be performed as it was normally done (light) and not how Whited had performed it (heavy).  AR 65, 68.

Whited argues the ALJ improperly substituted her own opinion for Dr. Upadhyay's by excluding the other limitations. While an "ALJ must not substitute his opinions for those of the physician," the ALJ "may reject the opinion of any medical expert where it is inconsistent with the medical record as a whole." *Finch*, 547 F.3d at 938. This is precisely what the ALJ did here. The ALJ found Dr. Upadhyay's opinion was not entirely supported by the rest of the evidence in the record and only adopted those limitations that were supported by substantial evidence, including the medical evidence. The ALJ did not improperly substitute her own opinion by discrediting those parts of Dr. Upadhyay's opinion that were not supported by substantial evidence.

I also find that the ALJ properly considered the combined effect of all of Whited's impairments and related limitations in the RFC and hypothetical question to the VE. To address Whited's urinary incontinence, the ALJ included the limitation of two additional restroom breaks in the morning and afternoon. In considering Whited's COPD, the ALJ included a limitation that Whited would need to avoid concentrated exposure to fumes, odors, dusts, gases and other environmental irritants. For his mental impairment, the ALJ included limitations of semiskilled work and occasional interaction with the public. All of these limitations were considered together in one hypothetical question in determining whether Whited could perform his past relevant work. For these reasons, the ALJ did not err in evaluating Dr. Upadhyay's opinion and she sufficiently considered the combined effect of Whited's impairments.

## C.     *Is the ALJ's Credibility Determination Supported by Substantial Evidence?*

Whited argues the ALJ's credibility findings were "so vague they cannot be used." Plaintiff's Brief, Doc. No. 11 at 18. The standard for evaluating the credibility of a claimant's subjective complaints is set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ must consider the claimant's daily activities; duration, frequency and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions. *Polaski*, 739 F.2d at 1322. The

claimant's work history and the absence of objective medical evidence to support the claimant's complaints are also relevant. *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000). The ALJ is not required to explicitly discuss each factor as long as he or she acknowledges and considers the factors before discrediting the claimant's subjective complaints. *Goff*, 421 F.3d at 791. "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). The court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnart*, 393 F.3d 798, 801 (8th Cir. 2005). The ALJ may not discount subjective complaints solely because they are not supported by objective medical evidence. *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008); *O'Donnell v. Barnhart*, 318 F.3d 811, 816 (8th Cir. 2003).

Here, the ALJ found that Whited's allegations of complete and total disability could not be fully accepted. Her reasons for discrediting Whited's allegations are dispersed throughout her discussion of the different types of evidence, which does not make them vague as Whited contends. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (the ALJ's credibility determination was not flawed where he set forth the relevant factors and spent the next several pages identifying evidence from the record that related to the factors and supported his credibility determination).

The ALJ's first reason for discrediting Whited was the lack of objective medical evidence supporting an inability to perform all work activity. She noted that Whited had not alleged severe symptoms from his COPD, he ignored recommendations to quit smoking and testing only revealed mild air trapping. With regard to his urinary incontinence, the ALJ considered Dr. McKay's opinion that Whited had no medical restrictions regarding his ability to work. However, she adopted his recommendation that Whited be allowed to have two additional restroom breaks both in the morning and the afternoon and limited Whited to medium work. As for Whited's mental

impairment, the ALJ noted he had not been hospitalized since he stopped drinking, he reported that his medication was working well, there were significant gaps in his history of treatment, he had not attended groups as recommended, he was consistently pleasant and cooperative at his appointments and his symptoms seemed to be transient and expectable reactions to psychosocial stressors. AR 20. These are all good reasons for discrediting Whited's allegations. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) ("[i]mpairments that are controllable or amenable to treatment do not support a finding of total disability."); *Guilliams*, 393 F.3d at 802 ("failure to follow a recommended course of treatment also weighs against a claimant's credibility."); *Halverson v. Astrue*, 600 F.3d 200, 931-32 (8th Cir. 2010) (ALJ may consider the absence of objective medical evidence to support the complaints, but may not discount subjective complaints solely based on the lack of objective medical evidence).

The ALJ also discredited Whited based on his daily activities, which included walking three blocks to the store three or four times a week and visiting with his son and grandson five to six times per week. AR 21. This was a good reason as "[a]cts which are inconsistent with a claimant's assertion of disability reflect negatively on that claimant's credibility." *Johnson v. Apfel*, 240 F.3d 1145, 1148-49 (8th Cir. 2001). Finally, the ALJ considered Whited's work history, which demonstrated that he had engaged in substantial gainful activity in the past 10 to 15 years while he suffered from depression and there was no evidence his depression had worsened since his alleged onset date. He had also collected unemployment benefits which required him to hold himself out as ready, willing and able to work. These were also good reasons for discrediting Whited. *See Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008) (holding that the claimant's allegations of "extreme fatigue" were discounted because she worked with the condition for over four years); *Johnson v. Chater*, 108 F.3d 178, 180-81 (8th Cir. 1997) ("Applying for unemployment benefits 'may be some evidence, though not conclusive, to negate' a claim of disability.")

When an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, the court should normally defer to the ALJ's credibility determination. *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). It is not my role to re-weigh the evidence. *See* 42 U.S.C. § 405(g); *see also Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) ("[I]f, after reviewing the record, [the Court] find[s] that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Commissioner's] findings, [the Court] must affirm the decision of the Commissioner.") (citations and quotations omitted). Here, I conclude that the ALJ provided good, specific reasons, supported by substantial evidence in the existing record, for discounting Whited's subjective allegations.

### Conclusion and Recommendation

For the reasons discussed above, I RESPECTFULLY RECOMMEND that the Commissioner's decision be **affirmed** and that judgment be entered against Whited and in favor of the Commissioner.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 9th day of January, 2014.

_____

LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE